IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JOANNE MILLER, individually and on
behalf of all others similarly situated,

        *Plaintiff*,

    v.                               No. 1:21-cv-01433-SB

DEL-ONE FEDERAL CREDIT UNION;
DOES 1–10.

        *Defendants*.

---

David W. deBruin, NAPOLI SHKOLNIK LLC, Wilmington, Delaware; Elaine S. Kusel, Sherief Morsy, MCCUNE WRIGHT AREVALO, LLP, Newark, New Jersey.

        *Counsel for Plaintiff.*

Loren R. Barron, MARGOLIS EDELSTEIN, Wilmington, Delaware.

        *Counsel for Defendants.*

**MEMORANDUM OPINION**

July 19, 2022

BIBAS, *Circuit Judge*, sitting by designation.

A good template serves as a guide, not gospel. It must be adapted to fit the facts. That is what should have happened here.

Banks must tell their clients a lot of information. To make that easier, the federal government publishes templates for them to use. One of those templates included the most common-sense definition of "overdrafting" a bank account. Del-One used that definition in the notice it gave to clients. But Del-One understands overdrafting more broadly than that, so the template's definition did not describe its policy clearly. Because Del-One did not adapt the template accordingly, it may have violated a federal regulation and committed fraud. So I let the claims against it proceed.

## I. BACKGROUND

Joanne Miller opened a checking account with Del-One. Compl., D.I. 1 ¶ 24. When she did, Del-One had her sign an opt-in notice about its overdraft policy. *Id.* ¶ 47.

Under that policy, Del-One customers can "overdraft" their accounts in two ways. If someone buys something without enough money in her account, Del-One may pay out of its own pocket, then charge a fee for that small "loan." *Id.* ¶ 19.

But sometimes, Del-One charges a fee even when the customer has enough money. That is because it considers future payments, like a monthly water bill or mortgage payment. *Id.* ¶¶ 40–44. Subtracting out those upcoming bills, Del-One calculates the customer's "available" money. *Id.* If she spends more than *that*, Del-One charges her an overdraft fee—even if she deposits the money to cover the future payments and Del-One never shells out anything. *Id.* ¶¶ 40–44, 59.

Under a federal regulation, Del-One must clearly explain in its opt-in notice the reasons it charges overdraft fees. *Id.* ¶ 46. But Miller found that notice ambiguous: she did not know that the bank factored in upcoming bills when deciding whether she had enough money in her account. *Id.* ¶¶ 5, 57–60. Upset, she brought a class action against Del-One for violating the regulation and Delaware's Consumer Fraud Act. *Id.* ¶¶ 2, 78–92.

Now Del-One has moved to dismiss both claims. D.I. 7. At this stage, I take Miller's complaint as true and ask whether her claims are plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). They are.

## II. MILLER'S REGULATORY CLAIM IS PLAUSIBLE

Miller says that because Del-One's opt-in notice did not explain its overdraft policy clearly, Del-One has violated a federal regulation. Compl. ¶¶ 78–84. Del-One suggests that I should not judge the text of that notice in isolation. Even if that notice was ambiguous, Del-One says, two other documents that it gave Miller clearly explained its overdraft policy. D.I. 8, at 2–6.

But I cannot consider those documents. They are not integral to Miller's complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Indeed, she does not even mention them.

Nor could they be integral, even if she had. Under the federal regulation Miller flags, Del-One must provide customers with "a notice in writing ... *segregated* from all other information, describing [its] overdraft service." 12 C.F.R. § 1005.17(b)(1)(i) (emphasis added). Thus, all relevant information about Del-One's overdraft policy must be in that one "separate[]" document. *Segregate* (def. A.2), The Oxford English

3

Dictionary (2d ed. 2000). Information in other documents is "irrelevant to whether … the segregated document[ ] adequately explains [Del-One's] overdraft policy." *Grenier v. Granite State Credit Union*, 2021 WL 5177709, at *3 (D.N.H. Nov. 8, 2021); *accord Fludd v. S. State Bank*, 566 F. Supp. 3d 471, at 482–83 (D.S.C. 2021); *Adams v. Liberty Bank*, 2021 WL 3726007, at *3 (D. Conn. Aug. 23, 2021). So I will stick to the text of the notice itself.

### A. Del-One's notice is misleading

Del-One's opt-in notice defines an overdraft as "when you do not have enough money in your account to cover a transaction, but [Del-One] pay[s] it anyway." D.I. 8-3; Compl. ¶ 48. Miller reads this definition to mean that "Del-One uses the actual balance and money in the account to calculate whether an overdraft has occurred" without factoring in upcoming bills. *Id.* ¶ 49. Understandably so. Ordinary consumers would likely understand the phrase "do not have enough money in your account" to refer to a literal shortfall of cash, not the possibility of one.

So the notice does not accurately "describ[e] [Del-One's] overdraft service" in a "clear and readily understandable" way. 12 C.F.R. §§ 1005.17(b)(1)(i), 1005.4(a)(1). Indeed, many courts have found that similar notices fail to describe this type of overdraft service clearly. *See, e.g.*, *Tims v. LGE Commty. Credit Union*, 935 F.3d 1228, 1243–44 (11th Cir. 2019); *Grenier*, 2021 WL 5177709, at *3; *Wellington v. Empower Fed. Credit Union*, 533 F. Supp. 3d 64, 70 (N.D.N.Y. 2021).

But wait, Del-One says. It pulled the language in its notice straight from the template in the regulation. D.I. 8, at 14–15; *see* 12 C.F.R. §§ 1005.17(d) & appx. A-9. Because the government surely understands the many reasons financial institutions

4

charge overdraft fees, it must have intended for the template to cover practices like Del-One's. D.I. 8, at 14–15.

That argument assumes too much. Perhaps the government intended the template to clearly describe many types of overdraft practices. Perhaps not: Miller's complaint casts the regulation as an attempt to crack down on overdraft fees. *See* Compl. ¶¶ 25–35. The regulation's text does not point one way or the other. So I cannot presume much about the drafters' intent.

Importantly, the regulation does not require Del-One to quote the template verbatim. It compels only a "substantially similar" notice. 12 C.F.R. § 1005.17(d). Indeed, the regulation stresses that the notice should provide "[a] brief description of the financial institution's overdraft service." *Id.* § 1005.17(d)(1). If a bank charges overdraft fees only when the customer spends more money than she has in her account, the model language might be accurate. *Cf. id.* § 1005.4(a)(1). But when, as here, a bank looks at upcoming payments to calculate overdrafts, the template might not be. *Cf. Chambers v. NASA Federal Credit Union*, 222 F. Supp. 3d 1, 15–16 (D.D.C. 2016) (describing an opt-in agreement that adds to the template "examples of situations that might result in an overdraft").

### B. Del-One is not shielded from liability

Even if the template (as used here) is ambiguous, Del-One says it cannot be held liable for using the government's suggested language. D.I. 8, at 14–15. It points to the statute underlying the regulation, which shields banks from liability for "any failure to make disclosure in proper form if [they] utilized an appropriate model clause." 15 U.S.C. § 1693m(d)(2). Because it used the template, it says, it cannot be liable.

But Del-One confuses form with substance. "Form" refers primarily to the "shape" or "configuration" of something, not its content. *Form* (def. 1.a), The Oxford English Dictionary (2d ed. 2000); *see also Form* (def. 1), Black's Law Dictionary (11th ed. 2019) ("The outer shape, structure, or configuration of something, as distinguished from its substance or matter."). Thus, Del-One might be shielded from a lawsuit about the notice's configuration, such as whether it:

- "[p]rovide[d] a reasonable opportunity for the consumer to affirmatively consent" to the overdraft policy;
- provided the notice "in writing"; or
- properly "segregated" the notice "from all other information."

12 C.F.R. § 1005.17(b)(1)(i)–(ii).

Challenges to each of those requirements would be challenges to the notice's "shape" or "configuration." But Miller's argument—that Del-One's use of the model language failed to accurately "describ[e] [its] overdraft service"—challenges its substance. *Id.* § 1005.17(b)(1)(i); *see Tims*, 935 F.3d at 1244–45; *contra Tilley v. Mt. Am. Fed. Credit Union*, 2018 WL 4600655, at *5 (D. Utah Sept. 25, 2018). (Indeed, the model notice's formatting is one-size-fits-all. Its content, as I have explained, is not.) Thus, Del-One is not shielded from Miller's regulatory claim.

### III. MILLER'S CONSUMER-FRAUD CLAIM IS PLAUSIBLE TOO

Miller also says Del-One violated Delaware's Consumer Fraud Act. Compl. ¶¶ 85–92. That Act bans any "deception, fraud, false pretense, false promise, [or] misrepresentation" in the provision of services. Del. Code tit. 6, §§ 2513(a), 2511(6). Miller casts

6

the ambiguous opt-in notice as a misrepresentation: Del-One suggested it would only charge overdraft fees when Miller did not have enough money in her account, but its policy was not so limited.

Del-One pushes back. It reminds me that the other account documents might provide the full picture of its overdraft policy. D.I. 8, at 16. But I have declined to look at those documents.

Alternatively, it says, this claim repackages a breach-of-contract argument. *Id.* at 15–16. Miller, it says, really protests "that Del-One charged her overdraft fees that were not authorized" by the opt-in notice. *Id.* at 16. And labeling that as a fraud claim would be impermissible because claims "based entirely on a breach of … a contract" must be brought "in contract and not in tort." *Brightstar Corp. v. PCS Wireless, LLC*, 2019 WL 3714917, at *10 (Del. Sup. Ct. Aug. 7, 2019) (internal quotation marks omitted).

But that argument rewrites Miller's complaint; she does not argue that Del-One broke some promise to her. Instead, she says Del-One "failed to disclose" important information about its overdraft policy. Compl. ¶ 87. That is a classic fraud argument, not a breach-of-contract one. So this claim may proceed too.

\* \* \* \* \*

Miller plausibly argues that Del-One's opt-in notice is misleading and confusing. So I let her claims for regulatory violations and consumer fraud proceed.

7