# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOANNE MILLER, individually and on behalf of all others similarly situated, | |
| Plaintiff, | **Civil Action No. 1:21-cv-01433-SB** |
| v. | |
| DEL-ONE FEDERAL CREDIT UNION, and DOES 1-10, | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS..............................................................................................................i

TABLE OF AUTHORITIES .................................................................................................... iii

I.      INTRODUCTION ............................................................................................................ 1

II.     RELEVANT PROCEDURAL HISTORY ....................................................................... 1

III.    SETTLEMENT TERMS ................................................................................................. 2

      A.     Class Definition .................................................................................................... 2

      B.     Analysis of the Data and Settlement Amount........................................................ 2

      C.     Payments to Claimants........................................................................................... 3

      D.    *Cy Pres* Distribution ............................................................................................ 4

      E.     Class Notice .......................................................................................................... 4

      F.     Opt Outs and Objections........................................................................................ 4

      G.     Attorneys' Fees ..................................................................................................... 4

            1.     The Fee Request is Reasonable Under the Percentage-of-the-Fund Method ................................................................................................... 4

            2.     The Fee Request is Also Reasonable Under the Lodestar Cross-Check .... 6

      H.     Costs.................................................................................................................... 10

      I.     Service Award to Plaintiff is Fair and Reasonable ............................................. 10

      J.     Release ................................................................................................................ 11

IV.    ARGUMENT.................................................................................................................. 11

      A.     The Settlement is Fair, Reasonable, and Adequate............................................... 12

            1.     The Complexity, Expense, and Likely Duration of Litigation ................. 12

            2.     The Stage of the Proceedings and Amount of Discovery Completed ...... 13

            3.     The Risk of Establishing Liability ............................................................ 13

            4.     The Risk of Establishing Damages ........................................................... 13

5.    The Risk of Maintaining the Class Action Through Trial ........................ 14

6.    Ability of a Defendant to Withstand Greater Judgment ........................... 14

7.    The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and in Light of All Attendant Risks of Litigation ...... 15

B.    The Court Should Certify the Settlement Classes................................................ 16

1.    The Proposed Classes Satisfy Rule 23(a) ................................................ 16

2.    The Proposed Classes Satisfy Rule 23(b)(3) ........................................... 18

V.    CONCLUSION........................................................................................................... 20

CERTIFICATE OF SERVICE ................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                      **<u>Page(s)</u>**

*Amchem Products, Inc. v. Windsor,*
   521 U.S. 591 (1997) ............................................................................................. 18

*Americas Mining Corp. v. Theriault,*
   51 A.3d 1213 (Del. 2012) ............................................................................... 9, 10

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
   568 U.S. 455 (2013) ............................................................................................. 19

*Barker v. Bayport Credit Union,*
   2020 WL 13095246 (E.D. Va. Apr. 17, 2020) ...................................................... 5

*Beltran v. Sos Ltd.,*
   2023 WL 319895 (D.N.J. Jan. 3, 2023) ................................................................ 5

*Boeing Co. v. Van Gemert,*
   444 U.S. 472 (1980) ............................................................................................... 4

*Brytus v. Spang & Co.,*
   203 F.3d 238 (3d Cir.2000) ................................................................................... 5

*Burns v. SeaWorld Parks & Ent., Inc.,*
   347 F.R.D. 51 (E.D. Pa. 2024) ........................................................................... 16

*Comcast Corp. v. Behrend,*
   133 S. Ct. 1426 (2013) ......................................................................................... 16

*Cullen v. Whitman Med. Corp.,*
   197 F.R.D. 136 (E.D.Pa.2000) ............................................................................. 5

*Gates v. Rohm and Haas Co.,*
   248 F.R.D. 434 (E.D.Pa.2008) ...................................................................... 16, 17

*Girsh v. Jepson,*
   521 F.2d 153 (3d Cir. 1975) ............................................................................... 12

*Gunter v. Ridgewood Energy Corp.,*
   223 F.3d 190 ......................................................................................................... 5

*Gunter v. United Fed. Credit Union*,
  2017 WL 4274196 (D. Nev. Sept. 25, 2017)................................................................. 19

*Harlan v. Transworld Sys., Inc.*,
  302 F.R.D. 319 (E.D. Pa. 2014) ................................................................................. 16

*Huffman v. Prudential Ins. Co. of Am.*,
  2019 WL 1499475 (E.D.Pa. Apr. 5, 2019).......................................................... 12, 14

*In re Am. Fam. Enters.*,
  256 B.R. 377 (D.N.J. 2000) ................................................................................. 13, 14

*In re AT & T Corp.*,
  455 F.3d 160 (3d Cir. 2006) .......................................................................................... 6

*In re Corel Corp. Inc. Sec. Litig.*,
  293 F.Supp.2d 484 (E.D.Pa. Oct. 28, 2003) .............................................................. 15

*In Re DaimlerChrysler AG*,
  2004 WL 7351531 (D.Del. Jan. 28, 2004) ................................................................. 14

*In re GM Trucks*,
  55 F.3d 768 (3d Cir.1995) .................................................................... 5, 11, 12, 13

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D.Pa. 2000) .............................................................................. 3, 13

*In re Linerboard Antitrust Litig.*,
  2004 WL 1221350 (E.D.Pa. June 2, 2004)................................................................. 11

*In re NFL Players' Concussion Inj. Litig.*,
  961 F.Supp.2d 708 (E.D.Pa. 2014)............................................................................. 11

*In re Prudential*,
  148 F.3d 283 (3d Cir.1998) .......................................................................... 5, 12, 13

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) .................................................................................. 14, 15

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*,
  426 F.3d 694 (3d Cir. 2005) .......................................................................................... 8

*Johnson v. Ga. Highway Express, Inc.*,
  488 F.2d 714 (5th Cir.1974) .......................................................................................... 7

iv

*MacDonald v. Cashcall, Inc.*,
    333 F.R.D. 331 (D.N.J. 2019) ................................................................. 18, 19, 20

*Mattern & Assocs., L.L.C. v. Seidel*,
    678 F. Supp. 2d 256 (D. Del. 2010) ...................................................................... 7

*McDonough v. Toys R Us, Inc.*,
    80 F.Supp.3d 626 (E.D.Pa. Jan. 21, 2015) ........................................................ 15

*Moon v. E.I. du Pont de Nemours & Co.*,
    2023 WL 1765565 (D.Del. Feb. 3, 2023) ............................................................. 5

*Norman v. Trans Union, LLC*,
    479 F.Supp.3d 98 (E.D.Pa. 2020) ....................................................................... 20

*Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005) ................................................................................. 5

*Rossini v. PNC Fin. Servs. Grp., Inc.*,
    2020 WL 3481458 (W.D.Pa. June 26, 2020) ..................................................... 15

*S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP*,
    927 F.3d 763 (3d Cir. 2019) ................................................................................. 6

*Spark v. MBNA Corp.*,
    157 F.Supp.2d 330 (D.Del. 2001) ...................................................................... 11

*Stanford v. Foamex L.P.*,
    263 F.R.D. 156 (E.D.Pa. 2009) .......................................................................... 18

*Sullivan v. D.B. Investments, Inc.*,
    667 F.3d 273 (3d Cir. 2011) ........................................................... 11, 13, 14, 15

*Varacallo v. Massachusetts Mut. Life Ins. Co.*,
    226 F.R.D. 207 (D.N.J. 2005) ............................................................................ 10

## **Statutes**

6 Del. C. §§ 2525 .................................................................................................. 1

15 U.S.C. §1693m(a)(2)(B) ............................................................................. 3, 15

15 U.S.C. § 1693 ................................................................................................... 1

## **Rules**

Fed. R. Civ. P. 23 ........................................................................................................ 18

Fed. R. Civ. P. 23(a) .................................................................................................... 16

Fed. R. Civ. P. 23(a)(4) ............................................................................................... 18

Fed. R. Civ. P. 23(b) .................................................................................................... 16

Fed. R. Civ. P. 23(e) .................................................................................................... 12

Fed. R. Civ. P. 23(e)(2) ............................................................................................... 12

Rule 23(a)(1) ................................................................................................................ 16

Rule 23(a)(2) ................................................................................................................ 16

Rule 23(a)(3) ................................................................................................................ 17

Rule 23(b)(3) ................................................................................................................ 18

## **Regulations**

12 C.F.R. § 1005.1 ........................................................................................................ 1

## I.    INTRODUCTION

In this litigation, Plaintiff Joanne Miller contends that Defendant Del-One Federal Credit Union charged overdraft fees in violation of Federal Reserve Regulation E, 12 C.F.R. § 1005.1, *et seq*. ("Reg E" or "Regulation E") of the Electronic Fund Transfer Act, 15 U.S.C. § 1693, *et seq*. ("EFTA"), and the Delaware Consumer Fraud Act, 6 Del. C. §§ 2525, *et seq*. ("DCFA"). The parties have settled these claims, and the Court has preliminarily approved the proposed settlement.  Plaintiff now submits this memorandum seeking the settlement's final approval.

After extensive discovery and a detailed expert analysis of Del-One's data, the parties agreed on a proposed $1,150,000.00 cash settlement (Declaration of Richard McCune ("McCune Decl."), ¶ 13). Subject to the Court's final approval, the settlement will be used to provide restitution to Settlement Class Members, as well as pay litigation costs and the costs of notice and claims administration, a service award to Plaintiff, and attorneys' fees. (*See* Settlement Agreement ("SA"), attached as **Exhibit 1** to the McCune Decl.).  Since the settlement meets all the criteria for final approval, Plaintiff respectfully requests the Court grant this motion.

## II.    RELEVANT PROCEDURAL HISTORY

Plaintiff filed her class action compliant on October 7, 2021, alleging that Del-One violated Regulation E's "opt-in" rule by failing to properly disclose the balance used to assess overdraft fees. (*See* Compl., Dkt. No. 1.) She alleged that Del-One was using a lower artificial balance, known as the "available balance," to assess overdraft fees on one time debit card and ATM transactions, and not the disclosed "ledger," or "current" balance. She alleged that Del-One's disclosures failed to accurately describe its overdraft practices. (*Id.*, at ¶¶ 2-5). Del-One moved to dismiss the complaint, but the Court denied the motion. (Dkt. Nos. 7-8, 11-12, 18).

1

Throught this litigation, the parties engaged in extensive discovery, each exchanging and responding to interrogatories and requests for production. (*See* Dkt. Nos. 31-32; 35-36; 39-41; 44, 47-48, 52; *see also* McCune Decl., ¶ 11). The parties also engaged in several arms-length meet and confer sessions pertaining to the transactional data at issue, which was analyzed by Plaintiff's expert. (Dkt. No. 42; McCune Decl., ¶ 12). The parties then agreed to this settlement, which was fully executed in April 2024. (McCune Decl., SA, Ex. 1).

## III.    SETTLEMENT TERMS

### A.    Class Definition

The Settlement Agreement defines two different sub-classes (collectively referred to herein as the "Settlement Class"). The "Reg E Fee Subclass" includes customers who incurred "Reg E Fees" from October 7, 2020 through May 19, 2024. (SA, ¶ 11). Reg E Fees are defined as fees Del-One charged on signature Point of Sale Debit Card transactions, "every day" debit card transactions, and/or any ATM transactions when the account had a positive actual balance at the time of the posting of the transaction during the Class Periods. (*Id.*, ¶ 10). The "DCFA Fee Subclass" includes all customers who incurred Reg E Fees from October 7, 2018 through May 19, 2024. (*Id.*, ¶ 11). Excluded from any class are Del-One, including its parents, subsidiaries, affiliates, officers, directors; all Settlement Class Members who opt-out of the settlement; and all judges assigned to this litigation and their immediate families. (*Id.*, ¶ 41).

### B.    Analysis of the Data and Settlement Amount

Although Del-One only produced a data sample for settlement discussion purposes, it has since produced all transactional data for Del-One customers assessed allegedly improper overdraft fees for the relevant time periods. (Dkt. No. 74, ¶ 15). Plaintiff's expert, Arthur Olsen, analyzed the data, which included account numbers, the date of each fee, the amount of each fee,

2

and the account balance at the time of posting. (*Id.*, ¶ 15(a-b)). He then determined that between October 7, 2020 through May 19, 2024, 11,475 accounts were assessed Reg E Fees, totaling $1,708,313.[1] (*Id.,* ¶ 19). These accounts represent the Reg E Fees Subclass members. For the DCFA Fee Subclass, Mr. Olsen determined that 16,150 accounts were assessed Reg E Fees between October 7, 2018 through May 19, 2024, totaling $2,490,986. (*Id.,* ¶ 18).

The settlement's $1,150,000 value is favorable for Settlement Class Members. If this matter proceeded to trial, Plaintiff estimates the Class's total recoverable actual damages would be $2,490,986. (*Id.* ¶¶ 18-19). Accordingly, Settlement Class Members will receive approximately 46% of their total potential actual damages under this settlement. (McCune Decl., ¶ 19). Even if $500,000 in Regulation E statutory damages is added to the total recoverable actual damages, *see* 15 U.S.C. §1693m(a)(2)(B), Settlement Class Members still will be receiving approximately 38% of potential damages, which courts consider to be a fair and reasonable amount. *Id.; see In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 183 (E.D.Pa. 2000) (settlement falling between 5.2% and 8.7% "of the best possible recovery" was reasonable in light of the probable length, uncertainty, and risk of further litigation).

### C. Payments to Claimants

All Settlement Class Members will be paid by direct deposit if they are current Del-One account holders or mailed a check if they no longer have a Del-One account. (SA, ¶ 64(d)). No affirmative claim will be necessary to receive compensation. *Id.* Settlement Class Members paid by check will have one hundred eighty (180) days to negotiate it. *Id.*

---

[1] Mr. Olsen has determined that Plaintiff was assessed five Reg E Fees totaling $125 between June 9, 2021 and September 20, 2021, which falls within both class periods.  (Dkt. No. 74., ¶ 20).

### D.    *Cy Pres* Distribution

Under no circumstances will any money from this settlement revert to Del-One. (SA, ¶ 65). If any residue remains after distribution, the Settlement Agreement provides the Special Olympics of Delaware as the intended *cy pres* recipient, with the Court's approval. *Id.*

### E.    Class Notice

Simpluris has successfully executed the approved plan for disseminating notice to Settlement Class Members. As of March 25, 2025, Notice was sent to 18,148 unique addresses associated with Settlement Class Members with a successful deliverable rate of 95.59%. (Declaration of Shelby Alvey on behalf of Claims Administrator Simpluris ("Simpluris Decl."), ¶ 8). True and correct copies of the Notices mailed and emailed to Class Members are attached as **Exhibit A** and **Exhibit B** to the Simpluris Declaration. (*Id.*, ¶¶ 5-7). The notice program's success is more fully described in the Declaration of Shelby Alvey, filed concurrently herewith.

### F.    Opt Outs and Objections

As of March 24, 2025, Simpluris has received no exclusion requests or objections from Settlement Class Members. (Simpluris Decl., ¶¶ 10-11). The deadline to file exclusion requests or objections is April 12, 2025. *Id.* Plaintiff will update the Court at the final approval hearing regarding any exclusion requests or objections received.

### G.    Attorneys' Fees

#### 1.    The Fee Request is Reasonable Under the Percentage-of-the-Fund Method

The Supreme Court has "recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to reasonable attorneys' fees from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980).

In this circuit, the percentage of common fund approach is the proper method of awarding attorneys' fees. *In re See Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 306–07 (3d Cir. 2005). Although a lodestar cross-check may be used to verify reasonableness, it does not trump the primary reliance on the percentage of common fund method. *Id.*; *see also Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n. 1 (3d Cir.2000); *Brytus v. Spang & Co.*, 203 F.3d 238, 243 (3d Cir.2000); *In re Prudential*, 148 F.3d 283, 333–34 (3d Cir.1998); *In re GM Trucks*, 55 F.3d 768, 821 (3d Cir.1995).

Here, Class Counsel requests attorneys' fees equal to one-third (33-1/3%) of the Value of the Settlement (i.e., one-third of $1,150,000) which equates to $383,333.33. (SA, ¶ 64(a); McCune Decl., ¶ 20.) A one-third fee award is well within the range of approval in the Third Circuit. *See Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 150 (E.D.Pa.2000) (explaining that "the award of one-third of the fund for attorneys' fees is consistent with fee awards in a number of recent decisions within this district"); *Moon v. E.I. du Pont de Nemours & Co.*, No. 19-CV-1856-SB, 2023 WL 1765565, at *4 (D.Del. Feb. 3, 2023) (awarding one-third recovery where "[c]lass [c]ounsel achieved excellent results for the class"); *Beltran v. Sos Ltd.*, No. CV 21-7454 (RBK/EAP), 2023 WL 319895, at *8 (D.N.J. Jan. 3, 2023).

Attorneys' fees of 30-33 1/3% are also the norm or market rate awarded in similar overdraft cases nationwide.  For example, in *In re TD Bank, N.A. Debit Card Overdraft Litig.*, Case No. 6:15-MN-02613-BHH, Dkt. No. 233 (D.S.C. Jan. 9, 2020), this Court awarded Class Counsel a fee in the amount of $21 million based on a settlement value of $70 million.  In *Walker v. People's United Bank, N.A.*, Case No. 17-cv-304 (AVC), Dkt. No. 119 (D. Conn. June 29, 2020), the Court found the attorneys' fee request of $2,466,666 to be a reasonable percentage of the settlement (33-1/3%). In *Barker v. Bayport Credit Union,* Case No. 20-cv-195, 2020 WL

13095246 (E.D. Va. Apr. 17, 2020), the Court found the requested attorney's fees of $1,056,066.05 to be reasonable (33-1/3%). And in *Cortes v. University & State Employees Credit Union,* Case No. 3:22-cv-00444, Dkt. No. 49 (S.D. Cal. July 8, 2024), the Court found the requested attorneys' fees of $166,666.00 to be reasonable, which was 33-1/3% of the $500,000 settlement fund. For a detailed overview of fee awards in other overdraft litigation, *see* Declaration of Professor Brian Fitzpatrick in Support of Plaintiffs' and Class Counsel's Request for Service Awards, Attorneys' Fees and Expenses, and Class Action Administrative Expenses ("Fitzpatrick Decl."), submitted in *In Re: TD Bank, N.A. Debit Card Overdraft Litig.,* No. 6:15-MN-02613-BHH, Dkt. No. 223 (D.S.C. Nov. 13, 2019), attached as **Exhibit 2** to the McCune Declaration.  The orders in these cases are attached to the McCune Declaration as **Exhibit 3**.

        **2.**       **The Fee Request is Also Reasonable Under the Lodestar Cross-Check**

        Although the percentage of the fund method is preferred in common fund cases, even using the lodestar method, the requested fees are reasonable. To determine the lodestar, the Court multiplies the number of hours class counsel worked on a case by a reasonable hourly billing rate for such services. *In re AT & T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006). The lodestar method is used to cross-check the reasonableness of a percentage-of-recovery fee award. *Id.* The crosscheck is performed by dividing the proposed fee award by the lodestar calculation, resulting in a lodestar multiplier. *Id.* Courts in this circuit have generally found that in common fund cases, multipliers ranging anywhere from one to four are the norm.  *S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP*, 927 F.3d 763, 774–75 (3d Cir. 2019). Here, Class Counsel's total lodestar is $322,046**,** resulting in a multiplier of around 1.19, well within the range of reasonableness. (McCune Decl., ¶ 23; Declaration of Michael J. Farnan ("Farnan Decl.,"), ¶ 6).

The Third Circuit has also provided a list of factors for determining the reasonableness of the multiplier, which include: (a) the time and labor required; (b) the novelty and difficulty of the question; (c) the skill requisite to perform the legal service properly; (d) the preclusion of other employment by the attorney due to acceptance of the case; (e) the customary fee; (f) whether the fee is fixed or contingent; (g) time limitations imposed by the client or the circumstances; (h) the amount involved and the results obtained; (i) the experience, reputation, and ability of the attorney; (j) the undesirability of the case; (k) the nature and length of the professional relationship with the client; and (l) awards in similar cases. *Mattern & Assocs., L.L.C. v. Seidel,* 678 F. Supp. 2d 256, 273 (D. Del. 2010) (citing to *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974)). As set forth below, all of these factors support Class Counsel's fee request.

### a.    The Time and Labor Required

Class Counsel invested considerable time and resources into the investigation, research, and prosecution of this case on behalf of the Settlement Class. To date, all firms comprising Class Counsel have expended 535.2 hours on this case. (McCune Decl., ¶ 23; Farnan Decl., ¶ 6). In addition, to date, Class Counsel have also incurred $28,380.00 in litigation costs. (*Id.,* ¶ 37). Class Counsel were both aggressive and successful in securing this settlement. Accordingly, this factor weighs in favor of the reasonableness of the fee award.

### b.    The Novelty and Difficulty of the Question

This case involved numerous complex factual and legal questions pertaining to federal banking and state consumer protection laws. (McCune Decl., ¶ 17). Accordingly, Class Counsel assumed a risk in taking on this case, but still secured a favorable result for the Settlement Class

7

Members. *Id.* This case also involved extensive discovery and contested motion practice, all weighing in favor of the reasonableness of the fee award request. (McCune Decl., ¶¶ 9-12).

### c.    The Skill Requisite to Perform the Legal Service

This Settlement was achieved by Class Counsel – who include some of the preeminent class action attorneys in the country – and who have decades of experience in prosecuting and trying class actions and complex litigation and have collectively recovered billions of dollars for class members in other complex class actions in other courts. (McCune Decl., ¶¶ 2-10; Farnan Decl., ¶ 3).The ability of Class Counsel to obtain a favorable result weighs in favor of granting the requested attorneys' fees.

### d.    The Preclusion of Other Employment

To date, all firms comprising Class Counsel have expended 535.2 hours on this case, which is time that could have been spent on other fee-generating work. (McCune Decl., ¶ 23; Farnan Decl., ¶ 6).[2] Accordingly, this factor weighs in favor of approving the requested fees.

### e.    The Customary Fee

In determining whether a requested fee is reasonable, the Court should consider the prevailing market rate in the relevant community for the same type of work. *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 708 (3d Cir. 2005). Courts in this circuit have routinely awarded fees of one-third or more in common fund cases. (*See* cited cases, section G.1, *supra*). Moreover, here, Class Counsel have produced evidence concerning their requested fees

---

[2] Class Counsel anticipate expending additional hours in order to travel to and attend the Final Approval hearing and finalize the settlement. Such hours are not included in this total, which only includes hours through the filing this motion.

as well as customary fees for similar class actions. (McCune Decl., ¶¶ 21-35; Farnan Decl., ¶¶ 7-10). Accordingly, this factor weighs in favor of approving the requested attorneys' fees.

### f.        Whether the Fee is Fixed or Contingent

Class Counsel took this case on contingency. (McCune Decl., ¶ 23, Farnan Decl., ¶ 5). Given Courts have routinely recognized the inherent risk involved in a contingency case, this factor weighs in favor of granting the fee request. *See Americas Mining Corp. v. Theriault,* 51 A.3d 1213, 1256 (Del. 2012).

### g.        Time Limitations Imposed by the Client

This factor is not at issue, and is neutral to the analysis.

### h.        The Amount Involved and the Results Obtained

Class Counsel secured a cash settlement of $1,150,000 for Settlement Class Members. (McCune Decl., ¶ 13). This case was complex, involving issues of federal banking and state consumer protection law. (*Id.,* ¶ 17). The result obtained is favorable, especially in considering the risk involved in litigating this complex case. (*Id.,* ¶ 19). Accordingly, this factor weighs in favor of granting the fee award.

### i.        The Experience, Reputation, and Ability of the Attorney

As mentioned *supra,* Class Counsel are highly skilled attorneys with many decades of experience litigating similar complex cases. (McCune Decl., ¶¶ 4-9; Farnan Decl., ¶ 3). Accordingly, this factor weighs in favor of granting the fee award.

### j.        The Undesirability of the Case

Also, as mentioned *supra,* this case involved complex factual and legal questions and took significant time and resources over the course of several years to litigate. (McCune Decl., ¶ 17). Additionally, the fact that Class Counsel brought this complex class action on a contingency

fee basis lends to the undesirability of the case. (*Id.,* ¶ 23; Farnan Decl., ¶ 5). *See Americas Mining Corp., supra,* 51 A.3d 1213 at 1256. Thus, this favor weighs in favor of the requested fee.

### k.    The Nature and Length of the Professional Relationship with the Client

Here, this factor is not at issue, and is neutral to the analysis.

### l.    Awards in Similar Cases

As mentioned *supra*, one-third the value of the settlement fund is routinely awarded for attorneys' fees in common fund cases in this Circuit. (*See* section G.1*, supra*). As a result, this factor supports the reasonableness of the fee award.

## H.    Costs

To date, Class Counsel have spent $23,380.00 in the process of litigating this case. (McCune Decl., ¶ 37). Class Counsel expects to spend no more than an additional $5,000 to attend the final fairness hearing and finalize the settlement. *Id.* Accordingly, Class Counsel requests reimbursement for costs totaling $28,380.00. *Id.* To the extent the full $5,000 is not used, it will be returned to the Settlement Fund for distribution to Settlement Class Members. *Id.* Since these are reasonable costs associated with this type of litigation, they should be awarded. *Id.*

## I.    Service Award to Plaintiff is Fair and Reasonable

Class Counsel also seeks the Court's approval of a $10,000 service award to the lead Plaintiff. Class Representatives perform considerable work and "confer[] benefits on all other class members [for which] they deserved to be compensated accordingly." *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 258 (D.N.J. 2005). Plaintiff's substantial

contributions on the Class' behalf are detailed in Plaintiff's declaration filed with Plaintiff's Motion for Preliminary Approval. (*See* Dkt. No. 75, ¶ 3). Courts in this circuit routinely approve service awards of $10,000 or higher. *In re Linerboard Antitrust Litig.*, No. CIV.A. 98-5055, 2004 WL 1221350, at *18–19 (E.D.Pa. June 2, 2004), amended, No. CIV.A.98-5055, 2004 WL 1240775 (E.D.Pa. June 4, 2004) (awarding $25,000 for each of five class representatives); *Spark v. MBNA Corp.*, 157 F.Supp.2d 330, 340 (D.Del. 2001), aff'd, 48 F.App'x 385 (3d Cir. 2002) (finding a $10,000 service award "to be reasonable, and … not excessive").  Accordingly, Class Counsel requests Plaintiff be awarded a $10,000 Service Award.

### J.    Release

In consideration for the settlement, Settlement Class Members are releasing the claims alleged in the operative Complaint from October 7, 2018 to May 19, 2024. (SA, ¶¶ 66-69).

## IV.    ARGUMENT

In the class action context, "[t]he law favors settlements, particularly in class actions" to conserve "judicial resources … by avoiding formal litigation." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.* ("*GM Fuel Tank Litig.*"), 55 F.3d 768, 784 (3d Cir. 1995). However, to ensure the class is treated fairly, "a district court must find that the requirements for class certification … are met" and also "determine that the settlement is fair to the class." *Sullivan v. D.B. Investments, Inc.*, 667 F.3d at 319. Given this Court has already preliminarily approved this settlement  and notice has been provided to all Settlement Class Members, it must now set a final fairness hearing to determine if the proposed settlement is "fair, reasonable, and adequate" such that the settlement can be executed. *In re NFL Players' Concussion Inj. Litig.*, 961 F.Supp.2d 708, 714 (E.D.Pa. 2014).

### A.    The Settlement is Fair, Reasonable, and Adequate

To determine the fairness of a proposed settlement, the Court must consider several factors, including: 1) the complexity, expense, and likely duration of litigation; 2) the reaction of the class; 3) the stage of the proceedings and amount of discovery completed; 4) the risk of establishing liability; 5) the risk of establishing damages; 6) the risk of maintaining the class action through trial; 7) ability of defendants to withstand greater judgment; 8) the range of reasonableness of the settlement in light of the best possible recovery; and 9) the range of reasonableness of the settlement to a possible recovery in light of all attendant risks of litigation. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).[3] As demonstrated herein, these factors support final approval of the settlement.

### 1.    The Complexity, Expense, and Likely Duration of Litigation

The first *Girsh* factor captures "the probable costs, in both time and money, of continued litigation.'" *GM Fuel Tank Litig.*, 55 F.3d at 812. This litigation involves complex legal issues, including banking law, class certification, and a consumer protection statute. (McCune Decl., ¶ 17). It has been pending for three years and could last several more if not settled. *Id.* Although Plaintiff believes the elements for class certification would be met, certification is not guaranteed. *Id.* While Plaintiff believes this case is strong, a trier of fact may find that Del-One's practices are consistent with its disclosures and federal law, preventing recovery. *Id.* In any event, a trial would be expensive, requiring additional costs. *Id. See In re Prudential Ins. Co. Am.*

---

[3] Rule 23(e) was amended in 2018 to specify certain factors required for final approval. Fed. R. Civ. P. 23(e). But prior to 2018, each circuit adopted its own factor test, and the Third Circuit continues to apply the traditional *Girsh* factors. *See Huffman v. Prudential Ins. Co. of Am.*, No. 2:10-CV-05135, 2019 WL 1499475, at *3 (E.D.Pa. Apr. 5, 2019) (citing Fed. R. Civ. P. 23(e)(2).

*Sales Prac. Litig. Agent Actions,* 148 F.3d 283, 318 (3d Cir. 1998). And even if a class is certified and a trial takes place, the losing party will likely appeal, further delaying recovery. *Id; see Ikon*, 194 F.R.D. at 179 (finding there exists an "almost guarantee that any outcome, whether by summary judgment or trial, would be appealed"). Accordingly, this factor supports approval.

### 2.    The Stage of the Proceedings and Amount of Discovery Completed

The second *Girsh* factor aims to "capture[] the degree of case development" and "determine whether counsel had an adequate appreciation of the merits." *GM Fuel Tank Litig.*, 55 F.3d at 813. The parties should have an "adequate appreciation of the merits of [the] claims, both as to liability and damages, before entering into the proposed settlement." *In re Am. Fam. Enters.*, 256 B.R. 377, 419 (D.N.J. 2000).

Here, extensive discovery has been completed. (McCune Decl., ¶¶ 11-12). Further, a data sample was produced to evaluate settlement possibilities, and full class data has been produced to fully evaluate damages. (Dkt. No. 74, ¶ 15). Thus, this factor supports approval.

### 3.    The Risk of Establishing Liability

The third *Girsh* factor requires examining "what the potential [consequences] of litigation might have been had class counsel elected to litigate the claims rather than settle them." *Sullivan v. D.B. Investments, Inc.*, 667 F.3d 273 at 321. This factor weighs in favor of settlement where the case's complexity and size poses "a substantial risk in establishing liability." *GM Fuel Tank Litig.*, 55 F.3d at 814. Here, Plaintiff's claims are strong but not risk-free. (McCune Decl., ¶ 17). Accordingly, the settlement offers fair and reasonable relief in light of these risks, supporting approval. *Id.*

### 4.    The Risk of Establishing Damages

The fourth *Girsh* factor attempts "to measure the expected value of litigating the action rather than settling it at the current time." *Sullivan v. D.B. Investments, Inc.*, 667 F.3d at 322.

Where "Plaintiffs' success is uncertain" and "the Settlement Agreement provides for immediate and sizeable monetary recovery," both "the fourth and fifth *Girsh* factors weigh in favor of the settlement." *Huffman,* 2019 WL 1499475, at *4 (E.D.Pa. Apr. 5, 2019). Here, the uncertainty of litigation is established by the complexity of the relevant legal issues, and that class certification and summary judgment has yet to be briefed and decided. Given further litigation raises the risk that a fact-finder could find Del-One's practices compliant, this factor weighs in favor of approval. (McCune Decl., ¶ 17).

<h3 style="text-align:center">5. The Risk of Maintaining the Class Action Through Trial</h3>

The fifth *Girsh* factor measures "the likelihood of obtaining and keeping a class certification if the action were to proceed to trial in light of the fact that the prospects for obtaining certification have a great impact on the range of recovery one can expect." *Sullivan v. D.B. Investments, Inc.*, 667 F.3d 273 at 322. But the Third Circuit has found this factor "toothless and insignificant," rendering it "insignificant." *In re Am. Fam. Enters.*, 256 B.R. 377, 420 (D.N.J. 2000). Here, although Plaintiff believes all class certification requirements can be met, there is no guarantee the Court would grant certification. (McCune Decl., ¶ 17). At worst, this factor is neutral.

<h3 style="text-align:center">6. Ability of a Defendant to Withstand Greater Judgment</h3>

The sixth *Girsh* factor addresses "whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537–38 (3d Cir. 2004). Generally, "an immediate settlement is preferable to … collecting a theoretical judgment." *Id.* Typically, where "there is little question that [defendant] could withstand a judgment up to and beyond … [p]laintiffs' claims … [t]his factor … weighs neither for nor against the settlement." *In Re DaimlerChrysler AG*, No. CV 00-984, 2004 WL 7351531, at *13 (D.Del. Jan. 28, 2004). While Del-One may withstand a greater judgment, this factor is neutral.

<p style="text-align:center">14</p>

**7.    The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and in Light of All Attendant Risks of Litigation**

The final two *Girsh* factors seek to "evaluate whether the settlement represents a good value" by analyzing "reasonableness in light of the best possible recovery and … in light of the risks the parties would face if the case went to trial." *Warfarin*, 391 F.3d at 538. Courts assess reasonableness "by comparing the present value of the damages plaintiffs would likely recover if successful [at trial], appropriately discounted for the risk of not prevailing … with the amount of the proposed settlement." *Sullivan v. D.B. Investments, Inc.*, 667 F.3d 273 at 323–24. Simply, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *McDonough v. Toys R Us, Inc.*, 80 F.Supp.3d 626, 645-46 (E.D.Pa. Jan. 21, 2015).

The settlement value of $1,150,000 is a favorable result. Plaintiff estimates the total recoverable actual damages would be $2,490,986 if this case went to trial. (McCune Decl., ¶ 19). Accordingly, Class members will obtain approximately 46% of their damages under this settlement. *Id.* Even if $500,000 in Regulation E statutory damages were added to the actual damages, *see* 15 U.S.C. §1693m(a)(2)(B), the Settlement Class Members will still be receiving an approximate 38% of all recoverable damages. *Id.* This amount is well within the range of reasonableness in this Circuit. *See Rossini v. PNC Fin. Servs. Grp., Inc.*, 2020 WL 3481458, at *17 (W.D.Pa. June 26, 2020) (approving settlement representing 10-20% of total recoverable damages at trial); *In re Corel Corp. Inc. Sec. Litig.*, 293 F.Supp.2d 484, 490 (E.D.Pa. Oct. 28, 2003) (finding that "[a] settlement amounting to 15% of maximum provable damages is within the range of settlement agreements approved by other courts in this District"). Accordingly, this factor weighs in favor of final approval.

15

**B.**    **The Court Should Certify the Settlement Classes**

To obtain final certification of the Class, Plaintiff must meet each of the four requirements of Fed. R. Civ. P. 23(a) and at least one subsection of Fed. R. Civ. P. 23(b). *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *Harlan v. Transworld Sys., Inc.*, 302 F.R.D. 319, 328 (E.D. Pa. 2014).

**1.**    **The Proposed Classes Satisfy Rule 23(a)**

The proposed Settlement Class satisfies Rule 23(a)'s criteria of: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.

**a.**    **The Numerosity Requirement Is Satisfied**

Rule 23(a)(1) requires that the class be so numerous that joinder of all members individually is "impracticable." Generally speaking, "[w]hile there is no rigid numerical guideline for determining impracticability of joinder, Courts have observed that usually more than 40 members is adequate. *Gates v. Rohm and Haas Co.*, 248 F.R.D. at 440. For the Reg E Fee Subclass, 11,475 accounts were assessed an overdraft fee. (Dkt. No. 74., ¶ 19). For the DCFA Fee Subclass, 16,150 accounts were assessed an overdraft fee. (*Id.*, ¶ 18). Accordingly, numerosity is satisfied.

**b.**    **The Commonality Requirement Is Satisfied**

Rule 23(a)(2) requires that a certified class have at least one question of law or fact common to the class. *Gates v. Rohm and Haas Co.*, 248 F.R.D. at 440. The commonality threshold is low, as class members need not share every factual and legal predicate. *Id*. One standard measure of commonality is to focus on the defendant's standardized course of conduct toward all class members. *Burns v. SeaWorld Parks & Ent., Inc*., 347 F.R.D. 51, 63 (E.D. Pa. 2024).

Here, Plaintiff's claims involve uniform fee practices, standard, non-negotiable terms in the Regulation E Opt-in Agreement, and statutory analysis that apply to the Settlement Class as a whole. (McCune Decl., ¶ 14). Whatever the case's merits, all customer accounts were governed by the same terms. *Id.* Likewise, all account holders who opted into Del One's Regulation E overdraft program did so under a uniform Opt-in Agreement with uniform overdraft procedures. *Id.* Since these claims are all based on the same fundamental facts, a resolution in this case would be common to all Settlement Class Members.

### c.    The Typicality Requirement Is Satisfied

Rule 23(a)(3) further requires that a representative party's claims or defenses be typical of class claims or defenses. Typicality is satisfied a representative's interests are not "markedly different" from those of class members. *Gates v. Rohm and Haas Co.*, 248 F.R.D. at 440. Typicality shall be found, despite factual differences, if the representative's claims emerge "from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Id*.

Here, Plaintiff's claims match the Class's claims. Plaintiff was opted-in using the same Regulation E Opt-in Agreement and procedures as all other Settlement Class Members. (McCune Decl., ¶ 14). The success of her claims depends on how the Opt-in Agreement is interpreted and whether Del-One followed Regulation E's opt-in requirements. *Id.* Moreover, Del-One assessed overdraft fees on Regulation E transactions during the class period to all customers using the same procedures. (*Id.*, Dkt. No. 74., ¶ 20) Plaintiff's claims are typical of the Class.

### d.    The Adequacy Requirement Is Satisfied

A party seeking to represent a class must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement turns on (1) whether the named plaintiffs (and/or their counsel) have any conflicts of interest with other Settlement Class Members and (2) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *Stanford v. Foamex L.P.*, 263 F.R.D. 156, 171 (E.D.Pa. 2009); *MacDonald v. Cashcall, Inc.*, 333 F.R.D. 331, 344 (D.N.J. 2019).

Plaintiff's interests appropriately align with the Class because success on her claims equates to success for the Class. Indeed, Plaintiff understands she is pursuing this case on behalf of all Settlement Class Members similarly situated and understands her duty to protect absent Class Members. (McCune Decl., ¶ 16; Dkt. No., ¶ 2).

Plaintiff's choice of Class Counsel also protects the Class's interests. The attorneys of the McCune Law Group and Farnan LLP have extensive experience and have vigorously prosecuted this case on the Class's behalf. (Mcune Decl., ¶¶ 2-9; Farnan Decl., ¶ 3).

### 2.    The Proposed Classes Satisfy Rule 23(b)(3)

Rule 23(b)(3) also requires that before certifying a class, the Court must determine "that the questions of law or fact common to Settlement Class Members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23.

### a.    Predominance of Common Questions of Law and Fact

The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 622-23 (1997). "Rule 23(b)(3) . . . does *not* require a plaintiff seeking class

certification to prove that each elemen[t] of [their] claim [is] susceptible to classwide proof." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 469 (2013) (emphasis in original). The predominance requirement is satisfied when "common issues of law or fact . . . predominate over non-common, individualized issues of law or fact." *MacDonald*, 333 F.R.D. at 348.

Here, the governing agreements, including the Opt-in Agreement, are common to all Settlement Class Members. (Dkt. No. 1; McCune Decl., ¶ 14). The predominate issue is whether Del-One violated its own disclosures and federal law when it charged customers overdraft fees. *Id.* The trier of fact need only interpret the uniform language of the relevant Opt-in Agreement and Regulation E to determine if Del-One's uniform practices have violated Regulation E. Moreover, Del-One's practices were common to all Settlement Class Members who were assessed fees under the same legal theory. (*Id.;* Dkt. No. 74, ¶¶ 18-20). To the extent there are variations in the frequency with which customers were charged fees, the amount of such charges, the nature of the transactions, and the reasons for the overdrafts are "legally irrelevant" to the predominance inquiry. *Gunter v. United Fed. Credit Union*, 2017 WL 4274196, at *7 (D. Nev. Sept. 25, 2017) Accordingly, predominance exists in this case.

### b.    Superiority

### i.    A Common Method Exists for Calculating Damages and Ascertaining Settlement Class Membership

The proposed class action is the superior method of resolving this case because the Class was ascertained by applying a computer algorithm to the customer transaction data maintained in Del-One's customer account database. (Dkt. No. 74, ¶ 15). Based on this information, Mr. Olsen has already identified each member of the Reg E Subclass and DCFA Fee Subclass (*Id.*, ¶¶ 18-19). This is a strong reason to certify the class and resolve these matters in one lawsuit.

19

### ii.     Superiority Over Individual Actions

The superiority of a class action depends on properly balancing "in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *MacDonald v. Cashcall, Inc.*, 333 F.R.D. 331, 347 (D.N.J. 2019). Here, the relatively small amounts of damages at issue with each fee charge does not justify individual lawsuits. Moreover, "[i]ndividual litigation … would be nonsensical for most of the proposed class … [as] the dominant factual and legal issues will facilitate an efficient, classwide adjudication." *Norman v. Trans Union, LLC*, 479 F.Supp.3d 98, 138 (E.D.Pa. 2020). Therefore, the most appropriate method of litigation is through a class action proceeding. Plaintiff is not aware of any other active lawsuit regarding these issues, nor of any potential Class Member who has expressed an interest in bringing such a lawsuit.

## V.     CONCLUSION

The proposed settlement is fair, adequate, and reasonable, and resulted from extensive, arms-length negotiations by experienced counsel. Plaintiff thus requests an Order finally approving the settlement, certifying the Settlement Class, approving the form and manner of notice, and setting the Final Approval hearing.

Dated: March 28, 2025                              By: */s/ Michael J. Farnan*

<div style="margin-left:50%">

Michael J. Farnan (Bar No. 5165)
mfarnan@farnanlaw.com
**FARNAN LLP**
919 N. Market St.
12th Floor
Wilmington, DE 19801
Direct Dial:  302-777-0338
Fax:  302-777-0301

Richard D. McCune (*Pro Hac Vice*)
rdm@mccunewright.com
Valerie Savran (*Pro Hac Vice*)

</div>

20

vls@mccunewright.com
**McCUNE LAW GROUP, APC**
3281 East Guasti Road, Suite 100
Ontario, California 91761
Telephone: (909) 557-1250

Emily J. Kirk (*Pro Hac Vice*)
ejk@mccunewright.com
**McCUNE LAW GROUP, APC**
231 N. Main Street, Suite 20
Edwardsville, IL 62025
Telephone: (618) 307-6116

Attorneys for JOANNE MILLER,
individually, and on behalf of all others
similarly situated.