IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JOANNE MILLER, individually and on
behalf of all others similarly situated,

        *Plaintiff*,

    v.                        No. 1:21-cv-01433-SB

DEL-ONE FEDERAL CREDIT UNION;
DOES 1–10.

        *Defendants.*

---

Richard D. McCune, Valerie L. Savran, MCCUNE LAW GROUP, APC, Ontario, California; Emily J. Kirk, MCCUNE LAW GROUP, APC, Edwardsville, Illinois; Michael J. Farnan, FARNAN LLP, Wilmington, Delaware.

                                            *Counsel for Plaintiff.*

Krista M. Reale, MARGOLIS EDELSTEIN, Wilmington, Delaware; Jason E. Hunter, Scott R. Sinson, LITCHFIELD CAVO LLP, Chicago, Illinois.

                                           *Counsel for Defendants.*

---

**MEMORANDUM OPINION**

May 9, 2025

---

BIBAS, *Circuit Judge*, sitting by designation.

    After more than three years of litigation, the parties are ready to settle this class action. I preliminarily approved the settlement a few months ago, and plaintiff has

filed her unopposed motion for final approval. D.I. 76–77. I held a fairness hearing with the parties on May 5, 2025, pressed them about the fairness of this agreement, and reviewed all their filings. Now, I approve the final settlement.

## I. DEL-ONE ALLEGEDLY UNDERPAYS ITS CUSTOMERS

Joanne Miller sued Del-One for allegedly violating federal banking regulations and state consumer-fraud laws. D.I. 1, Compl., at 31–35. She claimed that Del-One charges an overdraft fee even when the customer has enough money in her account. That is because it bases those fees not on how much money is *actually* in a customer's account but rather the actual amount *minus* recurring future payments, like a monthly water bill or mortgage payment. *Id.* ¶¶ 40–44. She alleged that this policy was hidden from customers. *Id.* ¶¶ 80–82. If so, Del-One may have violated federal banking regulations that require clear notice about such policies and state consumer-protection law that bars misrepresentations about business services. D.I. 17 at 2–3. Del-One moved to dismiss those claims. D.I. 7. But I let both go forward, the parties engaged in discovery for nearly a year and a half, and then they reached a settlement. D.I. 17–18 (denying the motion to dismiss); D.I. 28–29 (scheduling order); D.I. 51, 54 (discovery extension); D.I. 78 at 2, 79 at 6 (¶ 11), 79-1 at 2–3 (scope and length of discovery); D.I. 56 (notice of settlement).

For close to another year and a half, they diligently negotiated the specifics of the settlement and notified the class members. *See* D.I. 80 (notice). A few months ago, I preliminarily approved it. D.I. 76. It creates two subclasses: (1) the Reg E Fee Subclass (people assessed fees that may have violated Reg E between October 7, 2020 and May 19, 2024) and (2) the DCFA Fee Subclass (people assessed improper fees

between October 7, 2018 and May 19, 2024). D.I. 79-1 at 4 (¶ 11). The Reg E subclass is a subset of the DCFA Fee Subclass, so the customers charged under it are duplicates of the other subclass. The parties were sure not to "double-count any fee." D.I. 87 at 4. These two subclasses are necessary because the legal theories and timeframes differ. *Id.* at 2.

Plaintiff's expert analyzed all the relevant data and concluded that all 12,291 Del-One accounts in the DCFA subclass had been overcharged by $2,488,686 collectively. D.I. 74 at 8–9 (¶¶ 15, 18–19) (original estimate); D.I. 86 (¶ 5) (updated damages); D.I. 87 at 3, n.2 (updated number of accounts); D.I. 90 (¶¶ 3.c, 4–5) (final total). Under the proposed settlement, Del-One will pay $1,150,000 to create a fund for class members. D.I. 79-1 at 10–11 (¶ 47). One-third of that fund will go to plaintiff's attorneys, and Miller will get $10,000 of it for being the class representative. D.I. 79-1 at 20 (¶ 64(a)–(b)). The settlement broadly releases all claims related to this case. D.I. 79-1 at 23–24 (¶ 66). As counsel confirmed at the final-approval hearing, no class member has opted out nor objected.

## II. I APPROVE THE SETTLEMENT

Before approving the settlement, I "must find that the requirements for class certification under Rule 23(a) and (b) are met." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 319 (3d Cir. 2011). For the reasons stated below, they are. I then consider whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). I conclude that all the requirements are met.

### A. The class is appropriate under Rule 23(a) and (b)

*The class satisfies Rule 23(a).* To satisfy Rule 23(a), the class must show by a preponderance of the evidence that (1) it "is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011) (quoting Fed. R. Civ. P. 23(a)) (internal quotation marks omitted); *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 379–80 (3d Cir. 2013) (class bears the burden). The class meets all four requirements.

- *Numerosity*. According to plaintiff's expert, more than 12,000 Del-One accounts were assessed the unlawful fees. D.I. 90 (¶¶ 4–5). From this, it is fair to infer that there are well over ten thousand class members. That easily satisfies the numerosity requirements. *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 486 (3d Cir. 2018) (noting that 40 class members is usually enough to meet numerosity).

- *Commonality*. There must be "questions of law or fact common to the class." *Id.* at 487 (quoting Fed. R. Civ. P. 23(a)(2)). To satisfy this requirement, plaintiff must show that the class members "suffered the same injury." *Id.* They have. D.I. 74 at 7–9 (financial injury from overdraft fees arising under Reg E or state law). As plaintiff's attorney attests, "all customer accounts were governed by the same [allegedly unlawful] terms." D.I. 78 at 17; D.I.

79 at 7 (¶ 14). Plaintiff credibly represents that Del-One "used the same uniform account agreements … for all customers," assessed fees uniformly via centralized software, and "standardized [fees] for all customers." D.I. 87 at 4–5; D.I. 8-1 (¶¶ 4, 6); D.I. 8-2 (membership and account agreement). At the settlement hearing, the defendants agreed with these factual representations. So commonality is met.

- *Typicality.* Miller's claims are typical of the other class members' claims "in terms of their legal claims, factual circumstances, and stake in the litigation." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009). She was charged the same fees as everyone else in the class, making the facts of her claim and the law governing it the same as the other class members' claims. D.I. 75 (¶ 2); D.I. 74 (¶ 20); D.I. 8-1 (¶¶ 4, 6). Defense counsel also agreed with these factual representations. Plus, there is no evidence that Miller faces unique defenses. *In re Schering*, 589 F.3d at 598–99; D.I. 87 at 6. Her interests and incentives align with those of the other class members.

- *Adequacy of representation.* Both Miller and her lawyers will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Miller adequately represents the class for the reasons covered above in the typicality analysis. *In re Schering*, 589 F.3d at 602. Plus, her lawyers are well qualified and have litigated vigorously so far. *See* D.I. 79 (¶¶ 2–39).

I find that the class satisfies Rule 23(a). I move on to whether it satisfies Rule 23(b)(3)'s more stringent requirements.

*The class satisfies Rule 23(b).* Under Rule 23(b)(3), the class must show that (1) common questions predominate over individual issues and (2) using the class-action form is superior to other methods for adjudicating this controversy. Fed. R. Civ. P. 23(b)(3).

I start with predominance. Though predominance is a higher hurdle than commonality, it is easily satisfied here. *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 185 (3d Cir. 2019). Predominance is met if "the element of [the legal claim] is capable of proof at trial through evidence that is common to the class rather than individual to its members." *In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 190 (3d Cir. 2020). Here, common issues predominate: The claims all turn on whether Del-One's uniform practices violated Regulation E and Delaware law. *See, e.g.*, D.I. 73-1 (¶ 1) (claims arising under Reg E and state law); D.I. 74 at 8–9 (¶¶ 15–19) (describing the subclasses); D.I. 8-1 at 2 (¶¶ 4, 6) (describing Del-One's uniform practices, like its standard membership agreement); D.I. 8-2 (standard membership agreement). Predominance is met.

Next, I consider superiority. "[A] class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). That is met here. Forcing the class members to litigate individually would create "difficult, if not [practically] insurmountable" barriers to relief and burdens on courts. *In re Cmty. Bank of N. Va. Mortg. Lending Pracs. Litig.*, 795 F.3d 380, 409 (3d

Cir. 2015). For one, the class members likely would not proceed individually with their low-value claims (with each violation valued at just $25). D.I. 90 (¶ 3.c); D.I. 8-4. For another, "the tremendous burden [of] presiding over tens of thousands of nearly identical cases" would strain the courts. *In re Cmty. Bank*, 795 F.3d at 409. And because the class members' claims are all effectively the same, there is no difficulty in managing this class. A class action is superior.

In the Third Circuit, a (b)(3) class "must also be currently and readily ascertainable based on objective criteria." *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 477 (3d Cir. 2020) (internal quotation marks omitted). Though "a plaintiff need not be able to identify all class members at class certification," plaintiff has done so here. *Id.* at 470 (internal quotation marks omitted); D.I. 80 (¶¶ 3, 8). Plaintiff's expert tracked down all the Del-One accounts using the company's data, letting class counsel and the claims administrator put names to accounts. D.I. 74 (¶ 15); D.I. 80 (¶¶ 2–8).

All the Rule 23(a) and (b) requirements are met to certify the class.

### B. The notice sufficed

All the notice requirements are met too. "For any class certified under Rule 23(b)(3) … the court must direct to class members the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). The notice may be mailed or electronic. *Id.* It must "clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting

exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." *Id.*

The class administrator mailed or emailed notice to all qualifying account holders, with a successful delivery rate of nearly 96%. D.I. 80 (¶¶ 5–8). The notice explained what "this lawsuit [is] about," defined the class, and covered the relevant claims, issues, and defenses. *Id.* at 12. It also informed class members that they could appear with an attorney and opt out by a certain deadline. *Id.* at 13. Finally, it covered the consequences of remaining in the class, including that class members would get paid and release their claims by remaining in the class. *Id.* at 16. So the notice fulfilled all the requirements.

**C. Under Rule 23(e), the settlement is fair, reasonable, and adequate**

Now, I must consider whether the settlement satisfies Rule 23(e). It is unclear which factors I must analyze. In 2018, Rule 23(e) was amended. *See* Fed. R. Civ. P. 23, advisory committee's note to 2018 amendment. Under it, I must now consider four primary factors. Fed. R. Civ. P. 23(e)(2). But what about the pre-amendment caselaw? Courts had adopted increasingly long, multi-factor tests to determine whether a class settlement was fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23 adv. comm. note to 2018 amend., sub. (e)(2). These "lengthy list[s] of factors" had "take[n] on an independent life," so the amendment "directs the parties to present the settlement to the court in terms of a shorter list of core concerns." *Id.*

Yet some authorities maintain that the 2018 amendment "was not meant to change the law in this area, [so] the numerous court decisions applying these factors prior to the 2018 amendments still remain good law." 7B Charles Alan Wright, Arthur

R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1797.1 (3d ed. 2024); *see also, e.g.*, *In re Phila. Inquirer Data Sec. Litig.*, No. 24-CV-2106, 2025 WL 845118, at *8 n.2 (E.D. Pa. Mar. 18, 2025); *Hacker v. Elec. Last Mile Sols. Inc.*, No. 2:22-CV-00545, 2024 WL 5102696, at *7 (D.N.J. Nov. 6, 2024). By contrast, other district courts focus on the amended text. *See, e.g.*, *Matthews v. Phila. Corp. for Aging*, No. 22-CV-4632, 2025 WL 992198, at *4 n.2 (E.D. Pa. Apr. 1, 2025).

The Third Circuit appears not to have weighed in. *See In re: Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 322 n.2 (3d Cir. 2019) (applying the *Girsh* factors without deciding whether the 2018 amendment changes the analysis). Though some circuits have held that the preexisting judicial tests can still supplement the amended Rule, at least one has reserved the question. *Compare Ponzio v. Pinon*, 87 F.4th 487, 494–95 (11th Cir. 2023) (noting that the 2018 amendment did not "displace" the existing caselaw factors), *and Moses v. New York Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023) ("the revised Rule 23(e)(2) does not displace our traditional [caselaw] factors … [b]ut the rule now mandates courts to evaluate factors that may not have been highlighted in our prior case law, and its terms prevail over any prior analysis"), *with Briseño v. Henderson*, 998 F.3d 1014, 1026 (9th Cir. 2021) (reserving opinion on "whether a district court always abuses its discretion by applying the judicially manufactured factors" from the pre-2018 caselaw).

Confronted with this morass, I follow the text. The best way to figure out what a written law means is to read the words of its text as they were ordinarily understood when it was enacted. *See, e.g.*, *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438

9

(1999); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, 56–58 (2012). Reading the text of the amended Rule, I must consider the following:

- *Adequate representation*. Class counsel adequately represented the class. The lawyers on this team have substantial experience, litigated effectively, and briefed the issues well. *See* D.I. 79 (¶¶ 2–13, 23–39). Similarly, Joanne Miller has adequately represented the class by "reviewing the Complaint …, gathering documents, answering and verifying written discovery, and meeting with [her] attorneys." D.I. 75 (¶ 3).

- *Arm's-length negotiation*. The parties began negotiating the settlement two years into the litigation. D.I. 89 (¶ 2). These negotiations stretched several months and were at arm's length. *Id.* Plaintiff acknowledges that there is a clear-sailing agreement. D.I. 87 at 16; *see In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712, 724–25 (3d Cir. 2023). But there is no evidence of collusion: The parties agreed to the settlement amount *before* discussing attorney's fees. D.I. 89 (¶ 8). The negotiations were fair.

- *Adequate relief for the class*. Accounting for the costs of trial, the method of distributing money to the class, the attorney's fees, and any side agreements, as Rule 23(e)(2)(C) requires, the class is getting a fair deal. The federal-regulatory and state-law issues here are complex enough that the delays, risks, and costs associated with trial would be substantial. *See, e.g.*, D.I. 93-1 (costs of expert witness). The class is getting

nearly half of its actual damages, which fairly accounts for these risks. D.I. 74 (¶ 18) & D.I. 90 (¶ 3.c) (actual damages); D.I. 73 at 9 (¶ 44) (settlement amount). Counsel have proposed an effective way to distribute that money to the class: direct deposit or check. D.I. 79-1 at 13 (¶ 50.k), 21–23 (¶ 64.d). The attorney's fees are also reasonable. They are 1/3 of the common fund and the lodestar multiplier is just 1.19. D.I. 79 (¶ 20) (common fund), (¶ 23) (lodestar); *see In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 735–43 (3d Cir. 2001) (documenting much larger settlements that allowed 1/3 fees with higher lodestars); Fed. R. Civ. P. 23(h). These and all the other factors mentioned above make the fees reasonable. Plus, the parties have no side agreements here, and I approved the terms disclosed in the settlement. D.I. 87 at 15. In sum, the deal gives the class adequate relief.

- *Equitable treatment of class members*. The sub-classes are treated alike, and all like class members are treated alike. *Id.*; D.I. 79-1 at 4 (¶ 11), 21–22 (¶ 64.d).

Though I doubt that I need to consider the *Girsh* factors explicitly, my analysis and the outcome would be the same under them. My Rule 23(e) analysis covered most of these factors. For the remaining ones, no class members have opted out; presumably Del-One could withstand a greater judgment, but that does not outweigh all the factors cutting the other way; and the settlement is reasonable

overall. *See In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 437 (3d Cir. 2016).

Finally, plaintiff asks for $30,002 in costs. D.I. 93 at 2. I will award this amount. Plaintiff has documented these costs, and they are all justified as necessary litigation expenses that helped propel the class's interests forward. D.I. 93-1 (costs for expert report, which was crucial in getting the class relief). Awarding these costs is thus fair. So is the $10,000 award to the class representative, Joanne Miller. D.I. 79-1 at 20 (¶ 64(b)). As I found, she adequately represented the class. Counsel represented that she has been attentive during this case, and I find that credible. If money is left over, it will go to the *cy pres* recipient, the Special Olympics of Delaware. *Id.* at 23 (¶ 65). At the final-approval hearing, all counsel credibly attested that they had no connection to this organization. The Special Olympics is a worthy cause, and even with the possibility of a *cy pres* award, the settlement is still fair overall. *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 172–73 (3d Cir. 2013).

\* \* \* \* \*

This class settlement is fair, reasonable, and adequate. Counsel have litigated well and put together a good deal for class members. Because this settlement satisfies all the requirements of Rule 23, I certify the class and approve the settlement.